AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original    ☐ Du...

CLERK'S OFFICE
A TRUE COPY
Dec 08, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **23-M-512 (SCD)** |
| Information about the location of the cellular telephone assigned call number (414) 406-2832 | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before       12-22-23       *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to       Hon. Stephen C. Dries       .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of       03/07/2024       .

Date and time issued:      12-8-23. 10:20 am

_Stephen C. Dries_
*Judge's signature*

City and state:    Milwaukee, WI

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1.    Records and information associated with the cellular device assigned call number (414) 406-2832 with International Mobile Subscriber Identity (IMSI) 310410388831965,  with listed subscriber of  "DISH WIRELESS LLC" (referred to herein and in Attachment B as "Target Cell Phone") that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquarter at 208 S. Akard Street; Dallas, Texas 75201.

2.   The Target Cell Phone.

1

## ATTACHMENT B

### Particular Things to be Seized

I.      Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a. The following subscriber and historical information about the customers or subscribers associated with for the time period from November 1, 2023 to present:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity

1

Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the TARGET CELL PHONE including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which The Target Cell Phone will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

2

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b), involving George WOODS, Darius JARRETT, Kenneth BEVERLY, Carlos GARZA, Dante MCDONALD and other unknown persons since November 1, 2023 and prospectively for a period of 30 days from the date of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency

3

personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

4

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin



**CLERK'S OFFICE**
A TRUE COPY
Dec 08, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.  23-M-512 (SCD) |
| Information about the location of the cellular telephone assigned call number (414) 406-2832 | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 846; & 843(b) | Distribution and possession with the intent to distribute controlled substances; Conspiracy to possess with the intent to distribute controlled substances; and Unlawful use of a communication facility. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __90__ days *(give exact ending date if more than 30 days:* __03/07/2024__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JEFFREY MILAM  Digitally signed by JEFFREY MILAM
Date: 2023.12.07 13:46:05 -06'00'

*Applicant's signature*

Jeffrey Milam, DEA SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

__telephone__ *(specify reliable electronic means)*.

Date: __12-8-23__

*Judge's signature*

City and state: __Milwaukee, WI__     Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jeffrey Milam, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (414) 406-2832 with International Mobile Subscriber Identity (IMSI) number 310410388831965 (the "Target Cell Phone "). The service provider for the Target Cell Phone is AT&T ("Service Provider"), a wireless telephone service provider headquartered at 208 S. Akard Street; Dallas, Texas 75201.  is subscribed to "Dish Wireless LLC, with an address of 9601 S. Meridian Blvd, Englewood, CO 80112. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

1

Case 2:23-mj-00512-SCD     Filed 12/08/23     Page 9 of 28     Document 1

3. I am a Special Agent with the Drug Enforcement Administration, and have been since September 2014. Before that, I was employed as a police officer with the St. Louis County Police Department in St. Louis, Missouri, where I spent the last three years as a Task Force Officer with the DEA. During my tenure as a Special Agent, I have been involved primarily in the investigation of large-scale drug traffickers operating not only in the City of Milwaukee and the State of Wisconsin, but also throughout the entire United States based upon the direction of investigations that arise through the Milwaukee District Office of the Drug Enforcement Administration.

4. As a federal law enforcement officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, millions of dollars in United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on many search warrants. I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug

2

traffickers and money launderers. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

5. Based upon my training and experience, as well as information relayed to me during the course of my official duties, I know that a significant percentage of controlled substances, specifically marijuana, cocaine, heroin, and methamphetamine, imported into the United States comes from Mexico and enters the domestic market at various points along the southwest border of the United States, because Mexican cartels control the transportation, sale, and importation of cocaine, marijuana, heroin, and methamphetamine into the United States.

9. Based on my training, experience, and conversations with other law enforcement officers, I know that distributors of marijuana, methamphetamine, cocaine, heroin, as well as other controlled substances, often used cellular and landline telephones. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on a frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identities. I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled

3

substances while talking on the telephone. I know that drug traffickers often conduct extensive counter-surveillance to avoid law enforcement detection.

10. Based upon training and experience, I know that narcotics-trafficking and money-laundering organizations routinely used several operational techniques to sustain their illegal enterprises. These practices are designed and implemented to achieve two paramount goals: (1) the successful facilitation of the organization's illegal activities, including the importation and distribution of controlled substances, and the subsequent repatriation of the proceeds of that illegal activity; and (2) the minimization of the exposure of coconspirators, particularly those operating in leadership roles, from investigation and prosecution by law enforcement.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) have been committed, are being committed, or will be committed by George WOODS (DOB: 01/23/1975), Darius JARRETT (DOB: 01/29/1972), Kenneth BEVERLY (DOB: 05/23/1976), Carlos GARZA (DOB: 11/12/1964), Dante MCDONALD (DOB: 07/09/1979), and other unknown

4

persons, collectively identified as the WOODS Drug Trafficking Organization (DTO). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9. The United States, including Drug Enforcement Administration, is conducting a criminal investigation into George WOODS, Darius JARRETT, Kenneth BEVERLY, Carlos GARZA, Dante MCDONALD, and other unidentified subjects for possible violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b).

10. In late 2023, case agents debriefed a confidential source (hereinafter referred to as the CS), who provided information on a large-scale drug distributor, identified as George WOODS. The CS stated s/he was recently introduced to WOODS through an acquaintance in Milwaukee, Wisconsin. The CS stated WOODS distributes large quantities of cocaine, heroin, and marijuana throughout the Midwest region of the United States. The CS stated WOODS indicated that WOODS makes bi-monthly trips to Texas, where WOODS meets with a yet unknown source of supply near the U.S./Mexico border to obtain upwards of two hundred (200) kilograms of cocaine and/or heroin, and one thousand (1,000) to two thousand (2,000) pounds of marijuana. WOODS utilizes a yet

3

unknown method to transport narcotics from the southern Texas border, to various locations throughout the United States, including Milwaukee, Wisconsin; Chicago, Illinois; and Arizona. The CS stated WOODS owns/operates a trucking company, owns multiple properties, and multiple luxury vehicles, all of which are believed to be paid for with drug proceeds. The CS stated WOODS frequented a multi-unit apartment building in Milwaukee, later identified as 915 N. 24th Street, Milwaukee, Wisconsin.  The CS stated a black male subject known only as "BUNK," oversees the day-to-day operations/distribution of narcotics at 915 N. 24th Street. The CS added that WOODS utilizes multiple apartments within this building to store and distribute narcotics.[1]

11.    WOODS indicated to the CS that his (WOODS) Texas-based source of supply can obtain large quantities of narcotics for WOODS. WOODS further indicated that WOODS flies to Texas via commercial carrier, before driving to the U.S./Mexico border to facilitate the drug transactions with the source of supply. WOODS identified the source of supply as "CORTO."   The CS provided WOODS' telephone number of (414) 406-2832 (Target Cell Phone). The CS was later shown a Wisconsin Department of

---

[1] For several reasons, case agents believe the CS's information is reliable and credible. Substantial parts of the CS's information have been independently corroborated and verified by law enforcement. The CS has made direct observations, which were further corroborated and verified by law enforcement. The CS's information has been consistent with information obtained from travel records, telephone toll records, social media records, public databases, and surveillance. The CS has also provided information on violent crimes unrelated to this investigation, leading to the arrests of multiple suspects. The CS has prior convictions for theft, possession of controlled substances, possession of a firearm by a felon, manufacture or deliver controlled substances, and parole violations. The CS is cooperating for financial compensation.

Transportation (DOT) photograph of WOODS (without identifiers), which the CS positively identified as WOODS.

12.     In late November 2023, the CS stated that s/he was present at 915 N. 24th Street, Milwaukee, Wisconsin, when WOODS brought approximately twenty (20) kilograms of suspected cocaine and/or heroin into the building. The CS stated WOODS arrived in a black Cadillac Escalade, from which he (WOODS) removed three duffle bags containing the approximate twenty kilograms. WOODS placed the duffle bags and their contents into a first floor apartment which was occupied by other unknown subjects. The CS saw the approximate twenty brick-sized objects, and observed a vintage photograph of a male subject wearing a large hat, with two Bandoliers draped across his chest attached to the outside of one of the kilogram wrappings. The CS further confirmed that there is a main entrance door on the south-side of 915 N. 24th Street. The CS has utilized this entrance on previous occasions.

13.     On November 29, 2023, case agents conducted surveillance of 915 N. 24th Street. At this time, case agents observed a black Chevrolet Suburban parked directly in front of the residence. The Chevrolet displayed a Texas temporary registration of 4267H51. Through a law enforcement database, the registration listed to a Kenneth D BEVERLY; 914 Blewit Dr. Cedar Hill, Texas on a 2017 Chevrolet Suburban. The vehicle appeared to be purchased from Gerald's Auto Sales Inc., located at  208 NW 28th Street, Fort Worth, Texas. Case agents also observed a blue 2006 Dodge Durango with Ohio registration JDE9086 registered to a Darius JARRETT at 101 Towne Commons Way apt.

5

11, Cincinnati, Ohio. The Dodge Durango was parked directly across the street from 915 N. 24th Street.

14.     At approximately 11:57 a.m., case agents observed a black male subject with a black and grey beard, walk from the south-side of 915 N. 24th Street toward the Dodge Durango. The male subject opened the driver door to the Dodge, and leaned inside momentarily before entering a maroon Buick Park Avenue, which was parked in front of the Dodge Durango. Case agents later obtained a Wisconsin DOT photograph of Darius JARRETT, who strongly resembled the male subject observed accessing the Dodge Durango, before departing in the Buick.

15.     While remaining in the area, at approximately 12:26 p.m., case agents observed a black male subject arrive in a black Ford van with no registration. The male subject, wearing a black hoodie and black facemask, walked up to the south side of 915 N. 24th Street, in between 915 N. 24th Street and 911 N. 24th Street. Case agents observed a second subject who remained sitting in the front passenger seat of the Ford van. At approximately 12:35 p.m., the male subject in the black hoodie walked from the south-side of 915 N. 24th Street towards the Ford van. At this time, case agents observed the male subject appeared to be carrying a white object in his left hand before re-entering the driver seat of the Ford van. Case agents attempted to follow the Ford van, but lost visual surveillance of the vehicle and surveillance was terminated. Case agents believe the male subject in the Ford van arrived at 915 N. 24th Street to conduct a drug/money transaction. This belief is supported by the short timeframe the male subject remained at the building,

6

as well as case agents' direct observations of the male subject appearing to carry a white object (suspected narcotics) in the male subject's hand before departing the area.

16. Case agents returned to 915 N. 24th Street, and at approximately 3:15 p.m., a black male subject, wearing a grey hoodie and black jacket walked from the front yard of 915 N. 24th Street, and entered the driver seat of the black Chevrolet Suburban. At this same time, a second male subject (believed to be JARRETT), walked from the front yard of 915 N. 24th Street, and re-entered the Buick. Both vehicles departed the residence. After briefly following the Chevrolet, case agents observed the driver to park in the area of W. North Ave. and W. Sherman Blvd. The male subject exited the Chevrolet and stood on an adjacent sidewalk. Case agents observed the subject to be a light-skinned black male with a black beard, and medium build.

17. In late November 2023, case agents received an administrative subpoena response from AT&T, the service provider for the Target Cell Phone. The Target Cell Phone was subscribed to "Dish Wireless LLC; 9601 S. Meridian Blvd.; Englewood, CO. 80112. The Target Cell Phone has been active since July 28, 2023. Case agents are aware that the subscriber address for the Target Cell Phone is the corporate address for Dish Network. Case agents are also aware that drug traffickers oftentimes do not list their actual names or actual addresses when activating a cellular telephone service as a way to conceal their identity from law enforcement.

18. Case agents conducted telephone toll analysis of the Target Cell Phone, and identified frequently called numbers. Through a law enforcement database, the top two numbers (414) 416-3339, and (414) 915-3092 list to a Shanequa Collins. Case agents

7

queried social media (Facebook) inputting the name "Shanequa Collins", and identified a profile by the name "Nene Bre'Arie". In the public photos section of this profile, case agents identified numerous recent photographs of a black female subject posing with a black male subject, which case agents positively identified as WOODS. Case agents believe Collins is the girlfriend of WOODS.

19. The third most frequent contact of the Target Cell Phone is telephone (817) 707-5423. A law enforcement database lists the user of the telephone as Carlos J. GARZA. GARZA lists an address in Fort Worth, Texas. Case agents further conducted telephone toll analysis of telephone (817) 707-5423. Initial overlaps were identified between the Target Cell Phone and telephone (817) 707-5423. Specifically, in addition to contact with each other, both the Target Cell Phone and telephone number (817) 707-5423 were in frequent contact with another telephone number. The telephone number, (414) 336-9608, was listed in a law enforcement database to Kenneth BEVERLY. BEVERLY was previously identified as the recent owner of the 2017 Chevrolet Suburban observed at 915 N. 24th Street in late November (detailed in paragraph 13). Based on the investigation to date, case agents believe that GARZA, may be/may be associated with "CORTO", the alleged Texas-based source of supply to WOODS.

20. Another frequent contact of the Target Cell Phone, is (414) 574-6421. Through a law enforcement database, this telephone lists to a Darius JARRETT. Additionally, JARRETT was the subject of an anonymous drug tip submitted to the DEA Milwaukee District Office. In the drug tip, JARRETT was identified as a large-scale cocaine and fentanyl distributor, who utilizes telephone (414) 574-6421 (in contact with

8

the Target Cell Phone), and (262) 765-1263. The drug tip also stated that JARRETT utilizes a blue Dodge Durango with Ohio registration JDE9086, a vehicle previously identified by case agents during surveillance (referenced above in paragraph 13).

21.     Case agents continued to exploit social media databases, and identified a male subject appearing in several Facebook photographs alongside WOODS, and others. The male subject appeared to be an older black male subject with a black and grey beard, and wearing designer sunglasses. Utilizing a law enforcement database, case agents tentatively identified the male subject as Dante MCDONALD. The CS was shown a Wisconsin DOT photograph of MCDONALD (without identifiers), which the CS positively identified as "BUNK".

22.     Case agents believe George WOODS, Darius JARRETT, Kenneth BEVERLY, Carlos GARZA, and other yet unidentified co-conspirators are using their respective call numbers to facilitate communications among each other and with unknown co-conspirators and sources of supply. Case agents further believe the activity observed at 915 N. 24th Street; Milwaukee, Wisconsin strongly indicates that members of the WOODS DTO are utilizing the location for the storage, and distribution of narcotics. Case agents believe that monitoring the Target Cell Phone's location will assist in identifying potential sources of supply, distributors, and locations associated with this drug trafficking organization. This includes the monitoring of WOODS' allegedly bi-monthly trips to Texas, where WOODS is believed to travel to the U.S./Mexico border to meet with his source of supply to obtain narcotics destined for the Milwaukee, Wisconsin region, and other yet unknown destinations within the continental United States.

9

## TECHNICAL BACKGROUND

23. In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

24. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the

10

communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

25. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

11

## Pen-Trap Data

26.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content. Currently, the Target Cell Phone has International Mobile Subscriber Identity (IMSI) number 310410388831965.

## Subscriber Information

27.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a

12

particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone user or users and may assist in the identification of co-conspirators.

<u>**AUTHORIZATION REQUEST**</u>

28.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

29.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

30.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

31.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for 90 days.  This investigation is expected to remain covert at least until

then, so disclosing the warrant would alert targets or subjects about the existence of a federal investigation. Case agents will continue to request the same notification deadline for all warrants in this investigation, so that the notifications can be coordinated or extended as necessary. A single notification date will reduce the administrative burden on case agents and the Court, minimize the risks of disclosure, and promote judicial economy. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

32. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

14

# ATTACHMENT A

## Property to Be Searched

1.      Records and information associated with the cellular device assigned call number (414) 406-2832 with International Mobile Subscriber Identity (IMSI) 310410388831965, with listed subscriber of "DISH WIRELESS LLC" (referred to herein and in Attachment B as "Target Cell Phone") that is in the custody or control of AT&T (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquarter at 208 S. Akard Street; Dallas, Texas 75201.

2.      The Target Cell Phone.

1

## ATTACHMENT B

### Particular Things to be Seized

I.    Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a.  The following subscriber and historical information about the customers or subscribers associated with for the time period from November 1, 2023 to present:

      i.   Names (including subscriber names, user names, and screen names);

      ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

      iii. Local and long distance telephone connection records;

      iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

      v.   Length of service (including start date) and types of service utilized;

      vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the TARGET CELL PHONE including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which The Target Cell Phone will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service

3

Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 846, 841(a)(1), and 843(b), involving George WOODS, Darius JARRETT, Kenneth BEVERLY, Carlos GARZA, Dante MCDONALD and other unknown persons since November 1, 2023 and prospectively for a period of 30 days from the date of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

4